**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SOMPO JAPAN INSURANCE COMPANY OF AMERICA, INC., a New York corporation, and SOMPO JAPAN CLAIM SERVICES (AMERICA), INC., a New York corporation, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 07-cv-682 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| ALLIANCE TRANSPORTATION GROUP, LLC, an Illinois limited liability corporation, and PETKO TCHALAKOV, individually and doing business as Alliance Transportation, Defendants. | ) ) ) ) ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     Background**

On February 5, 2007, Plaintiffs Sompo Japan Insurance Company of America, Inc. and Sompo Japan Claim Services (America), Inc. (collectively "Sompo") filed a complaint alleging fraud, forgery, and breach of contract by Alliance Transportation Group, LLC ("Alliance"). Alliance made an offer of judgment under Federal Rule of Civil Procedure 68, which Sompo accepted. Therefore, on January 22, 2008, this Court entered judgment [30] in favor of Sompo and against Defendant Alliance in the amount of $100,000. At that time, the Court granted Sompo leave to file an amended complaint [29] adding a defendant.

On February 11, 2008, Sompo filed an amended complaint [31] naming Petko Tchalakov ("Tchalakov"), a former Alliance manager, as a defendant. The amended

complaint alleges fraud and forgery by Tchalakov. The case against Tchalakov proceeded to a bench trial [60] on May 13, 2009. At trial, the Court heard Tchalakov's testimony. The parties subsequently submitted proposed findings of fact and conclusions of law [61, 62].

In this memorandum opinion and order, the Court sets forth (i) its findings of fact concerning the matters before the Court for decision and (ii) its conclusions of law. The Court notes that its factual findings are based on the parties' proposed findings of fact and the documentary evidence and testimony presented at trial, at which time the Court had the opportunity to observe and evaluate the credibility of the sole witness, Mr. Tchalakov. On the basis of the findings of fact and conclusions of law stated below, the Court enters judgment for Defendant on the two counts of Plaintiffs' amended complaint directed against him.

## II.     Findings of Fact

### A.     Alliance

Until approximately the middle of 2007, Alliance was an Illinois Limited Liability Company engaged in the trucking business. Tr. at 9-11. The original owners of Alliance were Bogi Enterprises and Pidi Enterprises, each of which initially owned 50% of Alliance. Tr. at 57. Tchalakov's wife, Diane, was the sole owner of Pidi Enterprises. Tr. at 58. At no time did Petko Tchalakov have an ownership interest in Alliance. Tr. at 60.

When Alliance was first founded, Tchalakov and Radoslav Bogdanov, one of the owners of Bogi Enterprises, were its managers. Tr. at 10. As managers, Tchalakov and Bogdanov had check endorsement and check writing authority for Alliance. Tr. at 10, 62.

In January 2006, Bojidar Gogov ("Gogov") purchased a 48% interest in Alliance; Bogi Enterprises and Pidi Enterprises each retained a 26% ownership interest. Tr. at 58. At that time, Tchalakov was in charge of Alliance's safety department. In that position, Tchalakov's duties included managing and hiring drivers, monitoring the company's safety compliance, and handling claims. Tr. at 58. Beginning in January 2006, Gogov was responsible for the accounting department. Tr. at 59. As the head of the accounting department and Alliance's majority shareholder, Gogov's approval was required for the issuance of all checks after January 2006. Tr. at 60-62. However, Gogov did not have check endorsement and check writing authority until approximately August 2006. Tr. at 59-60.

B.     **Events Giving Rise to Sompo's Claims**

In 2006, DOV, a transportation brokerage company, hired Alliance to transport several truckloads of plasma monitors for Fujitsu. Tr. at 11-12, 34. One of the truckloads was stolen while in Alliance's possession and the monitors were never recovered. Tr. at 12. As a result of the theft, Sompo Japan Insurance Company, Fujitsu's insurer, made a claim upon Alliance. Tr. at 13. Alliance submitted that claim to its liability insurer, Lloyds of London. Tr. at 13. In May 2006, Lloyds of London agreed to settle the claim with Sompo Japan. Tr. at 13. Pursuant to that agreement, Lloyds of London agreed to pay Sompo $99,000 and Alliance agreed to cover its $1,000 deductible, for a total settlement to Sompo of $100,000. Tr. at 13-14. Tchalakov approved the settlement, including Alliance's agreement to pay its $1,000 deductible to Sompo. Tr. at 13. At that time, Alliance had the funds to pay its $1,000 deductible. Tr. at 14.

Lloyds of London's $99,000 settlement check mistakenly was sent to Global Systems Inc., which cashed the check. Tr. at 18. On June 21, 2006, Global Systems

3

issued a replacement check in the amount of $99,000 made payable to both Alliance and Sompo. Tr. at 17-18. Global Systems send the replacement check to Alliance, which received the check on or around June 22, 2006. Tr. at 83.

### C. Alliance's Handling of the Replacement Check

In June 2006, Alliance's bank, LaSalle Bank, permitted Alliance to endorse checks in amounts less than $10,000 by using a stamp. Tr. at 20, 44. Alliance's accounting department used the stamps to endorse such checks. Tr. at 62. For checks in amounts of $10,000 or more, the bank required a signature in addition to the mechanical stamp. Tr. at 20. In June 2006, only Tchalakov and Bogdanov were authorized to provide such a signature. Tr. at 10, 62.

On approximately June 22, 2006, Gogov instructed Tchalakov to sign the back of the $99,000 Global Systems check. Tr. at 43-44, 83. When Gogov handed the check to Tchalakov for his signature, the words "Sompo Japan" already had been handwritten on the back. Tr. at 20, 43. Tchalakov signed his name on the back of the check directly across from the words "Sompo Japan." Tr. at 21. Tchalakov signed the check so that Alliance's bank would accept the check for deposit and put funds in Alliance's account. Tr. at 21.

Alliance later deposited the Global Systems check in its account at LaSalle Bank. Tr. at 19. Alliance did not place the settlement funds into a trust account for the use and benefit of Sompo. Tr. at 22. At the time that the check was deposited, it had been stamped "for deposit only, Alliance Transportation Group." Tr. at 19. Tchalakov did not place the "For Deposit Only" stamp on the check, Tr. at 43, 64-65, nor did he deposit the Global Systems check in Alliance's account. Tr. at 45, 64-65. After signing the back of the check, Tchalakov did not see the check again prior to its being deposited. Tr. at 43.

4

At the time that he signed the back of the check, it was Tchalakov's understanding that Alliance was going to cash the check from Global Systems and issue a new $100,000 check to Sompo. Tr. at 21, 42. Tchalakov testified that he is aware that when a check is made payable to more than one entity – as the Global Systems check was – signatures from both entities are required before the check properly can be endorsed and deposited. Tr. at 23, 42, 43. Tchalakov further understood that at the time the check was deposited, Alliance intended to pay Sompo the full $100,000. Tr. at 22. Gogov informed Tchalakov that as soon as the $99,000 check cleared, Alliance would issue a check to Sompo in the amount of $100,000. Tr. at 23.

Between July 10 and July 25, 2006, a representative of Sompo sent Tchalakov several e-mails requesting payment of the $100,000 in settlement funds. Tr. at 26-32; Ex. 6. Tchalakov was out of the office on a family vacation at that time, and did not have access to his Alliance e-mail account. Tr. at 27-28. Therefore, Tchalakov did not receive the e-mails until he returned to the office on or around July 26th. Tr. at 27, 31-32. On July 26th, Tchalakov asked Gogov why Alliance had not sent a check for $100,000 to Sompo, and Gogov informed him that Alliance did not have sufficient funds to pay Sompo at that time. Tr. at 31-32. Gogov told Tchalakov to ask Sompo for its assistance in collecting money that Alliance was owed by DOV, the transportation brokerage company that hired Alliance to ship the stolen monitors. Tr. at 32. According to Gogov, once Alliance received a payment from DOV, it would have sufficient funds to pay Sompo. Tr. at 32.

On July 27, 2006, Tchalakov replied to Sompo's e-mails, stating that Alliance would "not have any problem" paying Sompo the $100,000 if it had "some assurance

from DOV" that it would pay its debt to Alliance. Tr. at 32, 37; Ex. 6. Sompo responded that it had no connection whatsoever to DOV, and accused Alliance of forging Sompo's signature on the Global Systems check. Tr. at 36; Ex. 6. The following day, July 28, 2006, Tchalakov responded, acknowledging that Alliance was required to send $100,000 to Sompo, and stating that Alliance was "not refusing to pay this amount." Tr. at 36; Ex. 6. In that e-mail, Tchalakov stated that the $99,000 Global Systems check was "signed from" someone in Alliance's accounting department. Tr. at 37; Ex. 6 at 3. However, Tchalokov admitted at trial that he was the one who signed the back of the check. Tr. at 20. On July 31, 2006, Tchalakov sent another e-mail to Sompo, stating that Alliance would not pay the $100,000 until Sompo's insured, Fujitsu, sent Alliance money that was owed to Alliance by DOV. Tr. at 38; Ex. 6. Alliance never paid Sompo the $100,000 in settlement funds. Tr. at 23.

### III. Conclusions of Law

#### A. Fraud

Count IV of the amended complaint asserts a common law fraud claim against Tchalakov. Under Illinois law[1], the elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) damages. *Connick v. Suzuki Motor Co., Ltd.*, 675

---

[1] Because this Court's jurisdiction is based on diversity, the Court applies the law of Illinois absent any suggestion by the parties that (i) another state's law should apply and (ii) the other state's law materially differs from Illinois law in some relevant respect. Both parties appear to assume that Illinois law applies here, because they cite exclusively Illinois law in their proposed conclusions of law. Accordingly, the Court will apply Illinois law. See *Indiana Ins. Co. v. Pana Cmty Unit Sch. Dist. No. 8*, 314 F.3d 895, 900 (7th Cir. 2002) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits").

N.E.2d 584, 591 (Ill. 1996). The Illinois Supreme Court "has held that the concept of fraud implies a wrongful intent, an act calculated to deceive." *Szajna v. General Motors Corp.*, 503 N.E.2d 760, 773 (Ill. 1986). "In the context of common law fraud, the law presumes that transactions are fair and honest; fraud is not presumed." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005). Therefore, the burden is on the plaintiff to prove fraud "by clear and convincing evidence." *Id.*; see also *Gordon v. Dolin,* 434 N.E.2d 341, 345 (1982) (observing that in a common law fraud action, the law places "a heavy responsibility * * * upon the party asserting the fraud").

The Court concludes that Tchalokov is entitled to judgment on Count IV because Sompo has failed to present clear and convincing evidence that Tchalakov endorsed the replacement check with intent to deceive. In particular, there is no clear and convincing evidence that Tchalakov intended to endorse the replacement draft in the name of Sompo. It is undisputed that Tchalakov did not write the words "Sompo Japan" on the back of the check. While Tchalakov did sign his name, that signature – and the endorsement stamp that someone else added – was required by the bank in order for *Alliance* to properly endorse the check. And viewing the evidence as a whole, the Court concludes that at the time that he signed the back of the check, it is at least as likely that Tchalakov believed that he was endorsing the check on behalf of Alliance – not Sompo – and that he was not trying to represent to the bank that he was signing on Sompo's behalf. Indeed, if a bank employee actually had examined the check, that employee presumably would have concluded that Tchalakov signed on behalf of *Alliance* because the bank's own procedures required both a stamp and a signature when accepting checks from Alliance in

7

amounts of more than $10,000, and Tchalakov was one of two individuals authorized to endorse checks for Alliance.

Moreover, while it is clear that Alliance wrongfully refused to pay Sompo the $100,000 settlement – indeed, Alliance has admitted as much in its offer of judgment [30] – there is no clear and convincing evidence that Tchalakov was part of a scheme to intentionally deceive Sompo. Tchalakov's involvement in Alliance's misappropriation of the $99,000 – for which a judgment has been entered against Alliance – was limited. As noted above, Tchalakov did not write "Sompo Japan" on the back of the check. Nor did he place the stamp on the check or deposit it in Alliance's bank account. Tchalakov simply signed his name on the back of the check across from the words "Sompo Japan" at Gogov's direction. While Tchalakov admitted that he signed the check so that the bank would accept it, that admission is not sufficient to establish that he intended to deceive either Sompo or the bank. To the contrary, the evidence tends to show that at the time that he endorsed the check, Tchalakov believed that the funds would be deposited in Alliance's account and that as soon as the Global check cleared, Alliance would send a check to pay Sompo. Tchalakov testified to that effect numerous times at trial. Tr. at 13, 21, 22, 42, 80. That testimony is uncontradicted, and having observed the witness at trial, the Court does not believe that his testimony was untruthful in that regard.

Sompo's contention that Tchalakov's later actions reveal intent to defraud is not persuasive. Sompo suggests that an inference of intent to defraud can be drawn from statements in Tchalakov's July 27th and July 28th e-mails to Sompo, including Tchalakov's statement that Alliance did not have a problem paying Sompo despite having been advised by Gogov that Alliance did not have sufficient funds as of that date and

8

Tchalakov's attempt to enlist Sompo to help Alliance collect other debts. As an initial matter, the e-mails shed no light on Tchalakov's intent at the time he signed his name to the back of the check. Moreover, Tchalakov's statements that Alliance did not have a problem paying Sompo and was not refusing to pay suggest that, even on July 28th, it was Tchalakov's understanding that Alliance intended to pay Sompo. Tchalakov's attempts to get Sompo to help Alliance collect other debts are consistent with his testimony that Alliance was having a liquidity problem. Tr. at 78. While these requests may constitute questionable business practices, they do not constitute clear and convincing evidence that Tchalakov intended to defraud Sompo when he signed the Global Systems check or at any time thereafter.

Sompo also points to Tchalakov's acknowledgment that he knows that when a check is made payable to more than one person or entity, signatures from both parties are required before the check can be deposited as evidence that Tchalakov must have intended to sign on behalf of Sompo. But despite the fact that the check at issue here was in fact deposited with only one signature – Tchalakov's, which was required to induce the bank to accept the check on behalf of Alliance – there is no basis for viewing the evidence as clearly and convincingly establishing that Tchalakov intended to sign for Sompo. As discussed above, the evidence just as strongly supports the inference that Tchalakov thought he was signing for Alliance and, in view of his position and responsibilities at Alliance, had no reason to be concerned with how a signature for Sompo would be obtained. If there were evidence (a) that Tchalakov himself signed Sompo's name to the check; (b) that he was responsible for Alliance's accounting department; and/or (c) that he had actually presented the check to the bank for deposit,

Sompo would have a much stronger argument. But there is no such evidence on this record.

Finally, Sompo argues that, given Tchalakov's check endorsement and check writing authority, his failure to write a $100,000 check to Sompo evinces his intent to defraud. But the undisputed testimony indicates that, as of June and July 2006, only Gogov, the head of the accounting department and Alliance's majority shareholder, had the authority to decide which creditors of Alliance would be paid, and when. Tr. at 24, 34-35, 61, 77. The Court finds no reason to doubt that Tchalakov, who was neither a member of the accounting department nor a shareholder, lacked the authority to unilaterally decide to pay a creditor $100,000, even to satisfy an acknowledged debt.

For the reasons stated above, the Court enters judgment for Defendant on Count IV of Plaintiff's amended complaint.

### B.  Forgery

In Count V of the amended complaint, Sompo purports to assert a claim against Tchalakov pursuant to 5 ILCS 175/30-5 of the Illinois Code, which provides a civil remedy to recover losses sustained as a result of forgery and other similar offenses. As a threshold matter, it is unclear whether a private cause of action under Section 30-5 can be maintained absent a prior criminal conviction for forgery.

Section 30-5 appears in the Electronic Commerce Security Act, and provides that

> [w]hoever suffers loss by reason of a violation of Section 10-140, 15-210, 15-215, or 15-220 of this Act or Section 17-3 of the Criminal Code of 1961 may, in a civil action against the violator, obtain appropriate relief. In a civil action under this Section, the court may award to the prevailing party reasonable attorneys fees and other litigation expenses.

5 ILCS 175/30-5. Section 17-3 of the Illinois Criminal Code, 720 ILCS 5/17-3, defines forgery and makes it a Class 3 felony. All of the other provisions listed in Section 30-5

appear in the Electronic Commerce Security Act, and make unlawful the unauthorized or fraudulent use of digital signature devices and digital certificates. 5 ILCS 175/10-140 (unauthorized use of signature device); 5 ILCS 175/15-210 (fraudulent use of certificate); 5 ILCS 175/15-215 (false or unauthorized request for a certificate); 5 ILCS 175/15-220 (unauthorized use of signature device).

The statutory language indicates that to bring a private cause of action, the victim must establish both (i) a violation of the applicable statute and (ii) losses as a result of the violation. Here, Sompo must show that Tchalakov violated 720 ILCS 5/17-3. It is undisputed that Tchalakov has not been convicted of forgery. Sompo argues that the absence of a prior criminal conviction does not bar its claim because this Court may find that Tchalakov committed a violation of 720 ILCS 5/17-3.

At trial, the Court expressed its concern that a federal court sitting in diversity in a civil case might not be empowered to find a "violation" of a state law felony criminal statute. That concern was motivated in part by the sense that a "finding" that there has been a "violation" of a felony provision of the criminal code – which appears to be a prerequisite to liability under Section 30-5 – seems dubious in the absence of the filing of charges by a state prosecutor and a jury trial. See *People v. Taylor*, 850 N.E.2d 134, 140 (Ill. 2006) ("the law does not authorize a felony conviction in the absence of a right to a trial by jury"); see also *People ex rel. Swanson v. Fisher,* 172 N.E. 722 (Ill. 1930); *People v. Cowart,* 201 N.E.2d 153 (Ill. 1964). There are no reported Illinois decisions applying Section 30-5 that might shed some light on this issue. But federal courts sitting in diversity have "limited discretion * * * with respect to untested legal theories brought under the rubric of state law." A.*W. Huss Co. v. Continental Cas. Co*., 735 F.2d 246,

11

253 (7th Cir. 1984). Cognizant of that general principle, federal courts are reluctant to expand state law beyond the boundaries of established precedent, particularly where the requested expansion would recognize a new theory of recovery. See *Todd v. Societe Bic, S.A.,* 21 F.3d 1402, 1412 (7th Cir. 1994) ("When given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path"); *Birchler v. Gehl Co.,* 88 F.3d 518, 521 (7th Cir. 1996) (favoring narrow interpretation of undecided issues of liability under state law).[2]

However, the Court need not decide whether a private right of action is cognizable absent a prior forgery conviction, because assuming that such a private right of action exists, Count V fails for the same reasons as Count IV – namely, the absence of clear and convincing evidence of fraudulent intent. The elements of forgery are (1) a false writing or alteration of some instrument in writing; (2) an instrument apparently capable of defrauding; and (3) an intent to defraud. *In re Estate of Bontkowski*, 785 N.E.2d 126, 131 (Ill. Ct. App. 2003); see also *People v. Brown*, 72 N.E.2d 859, 862 (Ill. 1947). Intent to defraud is considered an "essential element of forgery." *In re Johnson*, 552 N.E.2d 703, 709 (Ill. 1989). It is unclear what burden of proof should be applied: "beyond a reasonable doubt" – the standard for conviction of a felony – or "clear and convincing evidence" – the common law fraud standard. But Sompo's claim fails under either standard, because, as discussed in detail above (see pp. 7-10, *supra*), Sompo has

---

[2] In view of the Court's concerns about the viability of Sompo's forgery theory, the Court asked the parties to address the legal basis for maintaining such a cause of action in their proposed conclusions of law. Tr. at 6-7, 73-74. In its submission, Sompo – which has the burden on its forgery claim – has not provided any compelling authority or argument in support of its position that this Court may award a civil remedy for a violation of Section 17-3 of the Illinois Criminal Code absent a prior forgery conviction.

failed to present clear and convincing evidence that Tchalakov endorsed the replacement check with fraudulent intent.[3]

As Sompo notes, "intent to defraud may be presumed or inferred from proved facts and circumstances surrounding the transaction." *People v. Ciralsky*, 196 N.E. 733, 735 (Ill. 1935). However, "the intent, like the proof of the forgery or issuing of the forged instrument, must be connected with the person charged, or there is a failure of proof." *Id.* (citations omitted). Here, the evidence suggests that any intent to defraud that may be inferred in this case must be attributed to Alliance and Gogov; Sompo has failed to connect any intent to defraud to Tchalakov. Again, it is undisputed (a) that Tchalakov did not sign "Sompo Japan" on the back of the check; (b) that signing his own name to the check was consistent with bank policy for endorsing that check on behalf of Alliance; and (c) that Tchalakov did not present the check to the bank for deposit. Accordingly, the Court enters judgment for Defendant on Count V of Plaintiff's amended complaint.

---

[3] Indeed, because the Court has concluded (see p. 7, *supra*) that it is just as likely that Tchalakov intended to sign his name to the back of the check on behalf of Alliance – not Sompo – Sompo's claim would fail even under a preponderance of the evidence standard.

## IV. Conclusion

For the reasons stated above, the Court enters judgment in favor of Defendant on Counts IV and V of Plaintiff's amended complaint.

Dated: June 8, 2009

　　　　　　　　　　　　　　　　　　　　　　　　　
Robert M. Dow, Jr.
United States District Judge